UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DANIEL J. SVETTE,**

      **Plaintiff,**                              Case No. 2:04-cv-780
                                                    **JUDGE GREGORY L. FROST**
      v.                                    Magistrate Judge Norah McCann King

**JACOB A. CAPLINGER, et al.,**

      **Defendants.**

**OPINION AND ORDER**

This matter is before the Court for disposition of a January 21, 2005 motion for summary judgment (Doc. # 32) filed by Defendants Ross County, Sheriff Ronald L. Nichols, and Sergeant Nancy Haggard ("the Ross County Defendants") and two related motions to strike. (Docs. # 46, 51). For the reasons that follow, the Court finds the summary judgment motion well taken in regard to Plaintiff's sole federal claim, but declines to exercise jurisdiction over Plaintiff's state law claims and remands said claims to the state court. The motions to strike are moot.

**I. Background**

On October 30, 2002, Sergeant Nancy Haggard was answering calls received over the Ros County 9-1-1 emergency telephone line. Haggard received four cellular calls from a passenger in an automobile that was following another automobile. The caller indicated that the lead automobile–driven by an intoxicated Jacob Caplinger–was traveling quite erratically, going left of center, running red lights, striking the guard rail, entering a field along the road, and varying in speed from 5 miles per hour to over 75 miles per hour.

Although Haggard informed the caller that a sheriff's car would be sent, no car was

1

dispatched. Eventually, Caplinger's automobile again crossed the center line and hit head-on with an oncoming automobile driven by Plaintiff, Daniel J. Svette. Plaintiff sustained serious injuries involving several hundred thousands of dollars in medical bills and four hospitalizations.

Svette subsequently filed an action against the Ross County Defendants in the Ross County Court of Common Pleas on July 15, 2003. (Doc. # 1, Ex. 1.) After Plaintiff filed a July 30, 2004 Second Amended Complaint (Doc. # 1, Ex. 19) that included a claim under 42 U.S.C.§ 1983, the Ross County Defendants removed the state action to this Court on August 19, 2004 (Doc. # 1.) In November 2004, Plaintiff then filed a Third Amended Complaint that asserted seven counts–one federal cause of action under 42 U.S.C. § 1983 and various state law claims under Ohio Rev. Code §§ 2744.02(B)(2), (3), (4), and (5). (Doc. # 20.) The amended pleading also named Painting Industry Insurance Fund as a party with a potential subrogation interest in Plaintiff's action against the Ross County Defendants and sought for that company to assert any such claim. The Ross County Defendants in turn filed a two-count cross-claim for declaratory judgment against Painting Industry Insurance Fund, seeking a declaration that the company is the real party in interest for Svette's claim, that it must prosecute or waive its claim, and that Ohio Rev. Code § 2744.05(B) destroys the company's right of subrogation. (Doc. # 24.)

The Ross County Defendants have also filed a motion for summary judgment (Doc. # 32), as well as an objection to evidence constituting a motion to strike (Doc. # 46). Plaintiff in turn has filed his own motion to strike filings related to the summary judgment material before the Court. (Doc. # 51.) The briefing on all these motions has been completed, and the motions are now ripe for adjudication.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if Plaintiff, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Plaintiff, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

### B. Analysis

Plaintiff's sole federal cause of action is under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of

> the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, in order to prevail on his § 1983 claim, Plaintiff must show that, while acting under color of state law, the Ross County Defendants deprived him of a right secured by the Federal Constitution or laws of the United States. *See Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir. 1992).

*Respondeat superior* cannot provide a basis for liability here. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691 (1978). Thus, to satisfy his burden on his failure to train/failure to supervise theory, Plaintiff must demonstrate the existence of and impropriety of an involved policy. This is because the Sixth Circuit has explained:

> Municipalities are not ... liable for every misdeed of their employees and agents. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §§ 1983." [*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978).] This circuit has stated that to satisfy the *Monell* requirements a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir.1987) (adopting the test articulated in *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)).

*Garner*, 8 F.3d at 363-64. What constitutes a *Monell* policy or custom is therefore most often of critical import to § 1983 actions such as the case *sub judice*. The United States Supreme Court has held:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. ... Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly

4

thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). The Sixth Circuit has discussed this possibility:

> A city may also be liable, in narrow circumstances, for failure to train its officials, if that failure gives rise to a clearly foreseeable violation of constitutional rights reflecting deliberate indifference to them:
> "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury."

*Sell v. City of Columbus*, 47 Fed. Appx. 685, 691-92, (6th Cir. 2002) (quoting *City of Canton,* 489 U.S. at 390 ) (footnotes omitted). The ultimate focus "[i]n resolving the issue of a [municpality's] liability, ... must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390.

What makes the instant case unusual is that unlike most § 1983 failure to train/failure to supervise cases, this Court cannot reach the ultimate issue here of whether a state actor's policy is responsible for the underlying constitutional deprivation–because here there *was* no constitutional deprivation.

Plaintiff's unique theory of his case is that inadequate training and supervision of dispatchers led to a failure to respond to the 9-1-1 calls, which permitted Caplinger to injure him, which resulted in four hospitalizations constituting a deprivation of Plaintiff's liberty in contravention of his *procedural* due process rights under the Fourteenth Amendment. Citing that same constitutional protection, he also reasons that a property deprivation has occurred in that he

5

has incurred over $440,000 in medical treatment, over $25,000 of which he has paid himself.

The Ross County Defendants of course disagree with Plaintiff's analysis. They argue that no constitutional deprivation has occurred. Initially, they directed this Court to *May v. Franklin County Board of Commissioners*, No. 01-4000, 59 Fed. Appx. 786, 2003 WL 1134499 (6th Cir. Mar. 12, 2003). In *May*, the Sixth Circuit addressed a situation in which the administrator of a decedent's estate had brought a § 1983 action over the handling of 9-1-1 calls. The decedent had called 9-1-1 three times in an attempt to elicit help during a domestic dispute that resulted in her death. The district court in that case had denied a police officer qualified immunity, resulting in an interlocutory appeal.

On appeal, the Sixth Circuit held that no *substantive* due process violation existed based on the lack of both a custodial-type setting and a general "special relationship" between the defendant and the victim. *Id*. at 793, 2003 WL 1134499 at *6. Rather, specific facts related to the officer's direct involvement *at the scene of the crime* defeated qualified immunity. On remand, another judge of this Court subsequently granted summary judgment in favor of the county defendants, reasoning that there was no constitutional right to a 9-1-1 service, that the failure to protect a citizen against private violence was not a constitutional violation, and that they had neither *created* nor *increased* the risk to the decedent. *May v. Franklin Cty. Bd. of Comm'rs*, No. 2:00-cv-1081, January 7, 2005 Order, at 12, 15. *See also Schoenfield v. City of Toledo*, 223 F. Supp. 2d 925 (N.D. Ohio 2002) (explaining that a failure to act to protect a victim's liberty interests against harms inflicted by a third party is not a constitutional deprivation of due process); *Broyles v. City of Dayton*, No. C-3-94-42, 1997 WL 1764763, at *11 (S.D. Ohio Mar. 25, 1997).

These cases, although substantive due process cases, inform the instant analysis in that they reason that the existence of a 9-1-1 service, even an improperly functioning one, does not establish state actor liability for harm inflicted by a third-party private actor.  Likewise, they therefore support the proposition that state action is needed for there to be a violation of the Due Process Clause.  But as the Ross County Defendants correctly argue, here there was no governmental decision leading to Plaintiff's injuries at Caplinger's hands.  In the procedural due process context, then, there is no governmental process to attack because the government did not act to harm Plaintiff, but at best failed to act to keep him safe–a duty that is not constitutionally compelled.

Given these facts, the basis for Plaintiff's procedural due process claim is unclear.  It is illogical to characterize his claim as a complaint that he was not afforded notice of state action or an opportunity to be heard as one would find in the traditional procedural due process case.  Plaintiff is confusingly linking an allegedly flawed dispatching procedure to the deprivation of his asserted rights.  Although creative, this is an attempt to bootstrap a third-party's actions into a deprivation of due process claim by conflating a failure to act with reasoned state actor deliberation.  Plaintiff impermissibly mixes notions of who is an actor and equates private harm with state decisionmaking.

The Court must conclude that Plaintiff has failed to point to any evidence supporting the existence of a constitutional violation committed by the Ross County Defendants.  In the absence of such a predicate violation, the Court need not and can not reach the issue of whether there is insufficient training or supervision of the dispatchers, because even assuming that there was, such a policy lacks a connection to a constitutional deprivation so as to create liability.  Further,

there is simply no evidence of a history of dispatching errors resulting in constitutional violations.

The lack of the deprivation of a constitutional right informs the Court's qualified immunity analysis. To evade liability, the individual defendants invoke this affirmative defense, which is meant to safeguard an official's proper decision making process and offers that party potential relief from frivolous suits. *See D'Agastino v. City of Warren*, 75 Fed. Appx. 990, 993 (6th Cir. 2003). The Sixth Circuit has explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addition to shielding officials from liability, qualified immunity may entitle the official to not stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). This principal directs courts to make a ruling on the issue of qualified immunity early in the proceedings, so that the costs and expenses of trial are avoided where the defense is dispositive. *Id.*

Of import here is that the Supreme Court has instructed lower courts to use a distinct analysis to determine whether summary judgment based on qualified immunity is warranted. In addressing the potential applicability of qualified immunity, a court follows a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation. Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' " *Hoover v. Radabaugh*, 307 F. 3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClelland*, 101 F. 3d 1151, 1158 (6th Cir. 1996)).

*See also Saucier*, 533 U.S. at 201.

The doctrine of qualified immunity recognizes that an officer can be found to have violated the constitution, but be granted immunity for *reasonable* mistakes as to the legality of his or her action. *Saucier*, 533 U.S. at 206. The reasonableness of such mistakes is inherently dependant upon the clarity of the legal constraints governing particular police conduct. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Cognizant of this mandated inquiry, the Court finds that Plaintiff's case breaks down at the first stage of the sequential inquiry, because, as noted, even necessarily construing the facts and all reasonable inferences in Plaintiff's favor, there has been no violation of Plaintiff's constitutional rights. Absent such a predicate showing, Plaintiff has failed to present the Court with the threshold circumstances necessitating further inquiry as to whether the doctrine applies. Were the Court to engage in such inquiry, however, the Court notes that Plaintiff would face another insurmountable hurdle in demonstrating that his essentially confusing claim to a *procedural* due process right here constituted a clearly established constitutional right of which a reasonable person would have known.

A failure to train or supervise is not actionable in and of itself. Rather, it must be linked to a predicate deprivation of a constitutional right. Because no evidence exists that suggests even a reasonable inference that the Ross County Defendants deprived Plaintiff of a right secured by the Federal Constitution or laws of the United States, the Ross County Defendants are entitled to judgment as a matter of law on Plaintiff's § 1983 claim.

Having concluded that there is no valid § 1983 claim against the Ross County Defendants–a failure of the basis for federal question jurisdiction–the Court finds that it should not entertain the Ross County Defendant's two-count cross-claim and Plaintiff's remaining state law claims. Explaining the second conclusion first, the Court recognizes that, having found the § 1983 claim to be without merit, the Court should presumptively should not address Plaintiff's various state law claims. *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction.") (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1998)). The extant question is whether a dismissal without prejudice or a remand is warranted. The Sixth Circuit Court of Appeals has explained that " '[w]hether to remand or dismiss is a matter normally left to the discretion of the district court.' " *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000) (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1267 (D.C. Cir. 1995)). *See also Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) (noting that following dismissal of federal claims, court can dismiss state law claims except when there is a lack of subject matter jurisdiction mandating remand); *Musson*, 89 F.3d at 1255 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Court recognizes that Plaintiff originally sought to pursue his claims in state court and that this action is currently at the pretrial stage. Having weighed these factors, as well as the relevant considerations involving judicial economy, convenience, fairness to the parties, and

10

comity, this Court in its discretion both declines to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims, *see* 28 U.S.C. § 1367(c)(3) and (4), and remands Plaintiff's remaining state law claims to the state court.

The Court's § 1983 determination removes from this action the federal component of Svette's theories of recovery, which in turn obviously removes any ability of Painting Industry Insurance Fund to act to seek monies recovered for a § 1983 violation. The Court has also found that this case presents an instance where an Ohio state court should properly address issues of Ohio state law, including the state-law issues involved in Count VII of the Third Amended Complaint. As noted, this Court also concludes that Defendant's cross-claim for federal declaratory judgment does not present an issue compelling the exercise of federal court jurisdiction.

Any subrogation right that Painting Industry Insurance Fund could possess is predicated on Plaintiff's recovery under *state* law claims. There is no useful purpose in this federal court reaching out to determine issues of state law when there is a lack of diversity and when state law issues control the potentially dispositive threshold issues involved. Ohio has a strong interest in its courts deciding issues of immunity for its political subdivisions, whereas this Court's addressing said issues in this context–without a cause of action based on a federal right remaining–would constitute encroaching on (or at least unnecessarily entangling a federal court in) state jurisdiction and jurisprudence. Further, absent the § 1983 action, retaining the cross-claim as a questionable foundation for exercising federal jurisdiction risks turning this case into an example of procedural maneuvering to secure a federal forum. Moreover, the Ross County Defendants have the adequate state law mechanism of declaratory judgment available to them.

The Court therefore declines to exercise its discretion to entertain a 28 U.S.C. § 2201 action predicated upon potential liability linked to issues of state law better adjudicated in the state forum.

Finally, the foregoing analysis renders the motions to strike moot.  (Docs. # 46, 51.)  Said motions targeted numerous attachments submitted to the Court, but the Court did not need to rely on this evidence in its § 1983 analysis in light of the uncontested relevant facts that controlled.  As the parties' briefing reflects, the core issues involved in the federal claim implicate fairly "pure" questions of law, with the disputed material targeting factual issues linked to a *Monell* policy analysis (if the Court could have indeed reached that analysis) and, presumably, the state law issues.

### III.  Conclusion

The Court **GRANTS** summary judgment in favor of the Ross County Defendants on Plaintiff's federal claim (Doc. # 32) and **REMANDS** Plaintiff's state law claims to the state court.  The Court declines to exercise jurisdiction over the Ross County Defendants' cross-claim for declaratory judgment.  Finally, the Court also **DENIES AS MOOT** the Ross County Defendants' motion to strike (Doc. # 46) and Plaintiff's motion to strike (Doc. # 51).

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE